The next matter called is case number one two three six zero two in re the Marriage of Fatkin, agenda number four. Counsel, if you're ready you may proceed. May it please the court, counsel. My name is Dan Alcorn and I represent Todd Fatkin, the appellant in this case. There are really two issues. Both of the issues involve the appellate court, the third district appellate court, overreaching as it relates to jurisdiction, appellate jurisdiction, and as it relates to the standard of review. I'll address the issue of jurisdiction first. Concerning jurisdiction there is an amicus brief that agrees with Todd Fatkin and is a very well reasoned and thorough examination of the issue of jurisdiction in this case. It's important to remember that the trial court in this case reserved two issues. It reserved the issue of transportation costs and it reserved the issue of child support. Child support needed to be modified in light of the difference in the overnights that the parties would or the children would have with the parties given the relocation. The court needed some additional evidence on the incomes, what the incomes of the parties would be, and on what the overnights would be so that the court could modify the child support. So the court expressly reserved those two issues. That makes the non-relocation non-final. Now, there's no 304A finding. Mr. Alcorn, let's talk a little bit more extensively about jurisdiction. Rule 304B-6 allows for an immediate appeal from, quote, a custody or allocation of parental responsibilities judgment or modification of such judgment. That's correct, right? That's correct, Your Honor. And if we look at section 5-600D of the Marriage Act, that section defines parental responsibilities as, quote, both parenting time and significant decision-making responsibilities with respect to a child. That's correct, Your Honor. So under that definition, wouldn't a decision modifying the parties' parenting time necessarily be a decision modifying the parental responsibilities judgment? And the reason I ask this is because paragraph 21 of the trial court's order states expressly that, quote, upon relocation, the parenting time of the parties be modified as followed, followed by four substantial modifications. So how is there not rule 304B jurisdiction? Well, 304B-6 specifically applies to modifications or a custody or allocation of parental responsibilities judgment or modification of such judgment. No question about that. It does not say anything about relocation judgments. And that is different than, for example, Rule 306A-5, where the Supreme Court in its rule does specifically talk about relocation judgments. I agree with the judge. I agree with the court and with opposing counsel that this order, this order entered by Judge Mangieri, does modify the parental rights and responsibilities. Clearly does. The problem with that is what if it had denied, what if Judge Mangieri's order had denied my petition for relocation? Would that be appealable under 306 or under 304B-6? No. Clearly wouldn't. Nobody argues that it would. So if my petition had been denied, it would not be an appealable order. But if it's granted in a specific way, then it is an appealable order. I maintain that that is a bizarre and untenable approach to appellate jurisdiction. Now, the other thing is, what if Judge Mangieri's order had said that the only thing that he was going to change as it related to parental rights and responsibilities was pick-up and drop-off time? Now, that would, to some degree, modify the parental rights and responsibilities from what had previously existed under the custody order. But would that sufficiently implicate a modification of custody to make what is otherwise a relocation order a modification of custody order? I submit that that's too slippery a slope. It's too hard for trial counsel and appellate lawyers to figure out when there's appellate jurisdiction and when there isn't, when you've got that type of balancing test at best. It's a bizarre, slippery slope is what it is, and it's a trap for the unwary. It makes the decision as to when you have to file a notice of appeal, if you have to file a notice of appeal at all, completely inscrutable. But let's be clear that there is an alternative method for review. That's right. Under 306. Well, you're saying appellate jurisdiction generally, you have two different paths. You have the 304B that is an automatic right for final judgment, and then you have the 306, which, as you point out, uses the expression relocation, that is instead an interlocutory appeal by permission. I agree with that, Your Honor. Matter of fact, I would say there are three forms, three methods of getting here. One is 304AB or 304A. It would have been very simple for Daniel Facton to ask the court for a 304A finding. Why didn't they do that? Why didn't they do that? If they really wanted to appeal, they just asked for a 304A finding. I'm a little concerned about that. Okay. I'm a little concerned about it. which said you can't do that. Well. The 304B that said, well, in certain circumstances, you don't need 304A language. You have the avenue of 304B if it's a certain type of order and the certain types of orders are set up, and then 306 if it's a different kind of order. I agree with that, Your Honor, and I think the amici in their brief very carefully addresses the issue of 304A jurisdiction where it's a non-final order, and I agree with amici's assessment of that. I agree that there would be no jurisdiction, there would be no final order, and I think the trial court could have denied that 304A finding or could have granted it. The issue is Danielle Fatkin puts all of her eggs in one basket. She says that the only basis for appeal here is 304B6. She doesn't make an argument that this is a 306 interlocutory type of appeal, and the amici go into a long, thorough discussion of how it's possible under certain circumstances for the court to treat an appeal as under 304B6 if it was incorrectly handled that way as an interlocutory appeal. That's not what's going on here, and I think Mr. Cordes, the closing counsel, will get up and tell you that they're not relying on Rule 306, neither did the appellate court. This is a 304B6 case. And just to be clear, counsel, you said a moment ago that the trial court's order modified the parental responsibilities judgment. It did. It did. And that's specifically what was talked about in the statute, right? But are you saying there is a more specific statute we have to go to? Is that your argument? My argument is that Bednar and Rogin, which are first district cases. Prior to the amendment. The amendment of? The statute. 304B6? Yeah. Well, Bednar and Rogin both say that a removal, or now what we call a relocation case, is not a modification of custody, even where the parents have joint custody as a matter of law. So Bednar and Rogin are diametrically opposed to the third district in this case. I think that it's untenable for the court to interpret 304B6 in a way that makes relocation judgments, modification of custody judgments, when they deal with custody. The problem is that there's too much leeway, there's too much of a gamut between clearly what the court did in this case, which was changing custody because we've got a relocation all the way from East Galesburg, Illinois to Virginia Beach, Virginia. That completely upsets the apple cart as it relates to parental rights and responsibilities. But what about, from a policy perspective, which is important in how we're going to interpret 304B6, from a policy perspective, does it make sense to say that, well, appellate counsel or trial counsel, in deciding whether or not to file a notice of appeal and when to file the notice of appeal, they have to sit down and look at that order. And they have to say, well, does this implicate parental rights and responsibilities? And to what degree does it implicate parental rights and responsibilities? And then they've got to figure out, they've got to guess what the appellate court or what the Illinois Supreme Court is going to, whether they're going to agree with them or not, because it's a balancing test. That's not how we do appellate jurisdiction. If the Supreme Court had wanted to make relocation judgments subject to 304B6, it simply would have enumerated that in it, like it did in 306A5. So earlier, before this rule was amended to include the new language about allocation of parental rights, the committee comments made pretty clear that what is appealable here are two things. The original judgment of disillusion, including the custody order and the original Dissolution of Marriage Act order, and specifically, so that would be under 5-603, and any orders modifying child custody subject to dissolution of marriage pursuant to 610. The committee comment says those are the only two that are going to be under 304B, correct? Yes. Then the rule itself was amended to add this new language about modification. Yes. Because before, if modification was defined as 610, relocation is 609. And so the rule doesn't track the change in the language. Okay. I would agree with that. Relocation is 609. It's neither 603 or 610, correct? Right. And the committee comment says 304B is about 610 and 603. That's right. But then the language gets amended and adds this other language about modification, and now we're in this place where we're not sure quite where that fits. I agree wholeheartedly with that, Your Honor. And that's the exact language used by the rule. So the order stated expressly that it does. So where is the guessing that you say? What guessing is required? Because if it had been slightly different, Your Honor, if it had been a 25-mile move, or let's say a 26-mile move, I guess, to Burlington, Iowa, instead of going to Virginia Beach, Virginia, it's very possible that the court could have just granted the relocation petition and said, and I'm going to make the pickup and drop-off site somewhere different than it is right now. Let's say it had been East Galesburg or Knoxville, because they live two miles apart. Now they're going to live 26 miles apart. So the court could have said, now I'm going to make the pickup drop-off site a Quokka, Illinois. Would that be a modification of parental rights and responsibilities? Probably, a little bit. So is that appealable immediately? I guess it would be, if that's what the court adopts or how it interprets 304b6, the way that an appellee wants it interpreted. I think that it's bizarre, though, if the court had denied my petition, the same petition, that's not appealable? Wouldn't it be appealable under 306? I don't see how it would be appealable under 306, because it's not an interlocutory order. But that's the bizarre aspect of that, treating a denial as not appealable, but a grant as appealable, so long as the grant has some language that addresses parental rights and responsibilities. There's no guidance in the rule about how sufficient or how much of a modification of parental rights and responsibilities has to exist. It just has to, to some degree, do that. So then we get into a whole, the reality of matrimonial and post-dissolution practice is that you get all sorts of variations on the theme. It could be as simple as saying that one party, because of the 26-mile difference, has to do something slightly different than what they had done under the preexisting order. I'm just wondering if this denial of modification that you come up with is a red herring. It seems like the rule is concerned with modifications, not a denial of something that already exists. So I don't know that that's apples and apples, to say, okay, well, okay, the rule's concerned with modifications, but you're going to have to admit the rule wouldn't apply to denial of modification. No, the rule doesn't express that it deals with denial of modifications. That's status quo stuff, right? We're not going to disturb the status quo, where a modification would be a disturbance of the status quo, and that's what the rule deals with. Well, but appellate jurisdictional rules typically deal with the issue of what type of judgment is appealable. And when you're looking at what type of judgment, when you're trying to classify the type of judgment, you look at the pleadings. You look at what kind of petition was filed. If it's a petition to relocate, then the judgment is on a petition to relocate. So if that is not appealable if it's denied, but it's appealable if it's granted, that's a bizarre situation. That's not a usual appellate court rule. Usually it's appealable denied or granted because of the type of order or rule that it is. Now, I'm not saying that that can't be the rule. That could be the rule. I would suggest the way to make that the rule is for the Supreme Court to amend its rule. The Supreme Court could always amend Rule 304B6 to specifically enumerate relocation judgments as immediately appealable. That would be the way to do it, not to create a more complex case law solution that is very nuanced, subtle, and slippery slow. I think appellate jurisdictional issues ought to be bright line. You ought to know if you're going to trip over it or not. That's what I'm arguing. Now, with regard to the second issue, that is the issue that is very near and dear to my heart, and that is the overreaching of the appellate court as it relates to the merits, the standard of review. This case is governed by Eckert and Collingborn. Matter of fact, this case is almost identical to Collingborn. And it seems to me in doing the research and reading the cases that every so often, every five years, every ten years, the Illinois Supreme Court has to get back involved in this standard of review issue and tell the appellate court, no, it is not your job to simply reweigh the evidence and substitute your judgment for that of the trial. That's exactly what happened in Eckert. That's exactly what happened in Collingborn. And now it's happened again. And there's two of the four judges that have heard this case agree with Todd Fatkin that the relocation is appropriate.  Not based on any evidence. I would suggest to this court that that can't possibly be true, where you've got two judges, including the one that actually heard the testimony and reviewed the evidence, thinks that it's in the best interest of the children to move with their father. How those two judges can both be found to be arbitrary, unreasonable, and not looking at any of the evidence. And that's what the standard of review is. The standard of review, of course, is a clearly against the manifest weight of the evidence standard. And the case law suggests or states that a decision is against the manifest weight of the evidence where the opposite conclusion is clearly evident or where the court's findings are unreasonable, arbitrary, and not based on any of the evidence. That's a very deferential standard. I see my time has expired. We are asking this court to dismiss this appeal for want of appellate jurisdiction. But if the court does find it as jurisdiction and moves to the merits of the case, we're asking the court to reverse the appellate court and affirm the trial court who heard the evidence in this case. Thank you. Good morning. May it please the court, Mr. Alcorn. My name is Dan Cordes, and I, you can probably tell, I'm in the cold club this morning as well. My apologies. And if I have to take a drink of water in the middle of my comments, I do apologize. I agree with Mr. Alcorn in terms of his macro level assessment. Mr. Cordes, before, I'd like to start where Mr. Alcorn left off. What's the standard of review for this court with respect to the best interest? Manifest weight of the evidence, Your Honor. Here the trial court conducted a three-day evidentiary hearing, right, during which both parties testified and presented evidence. The court conducted an in-camera interview with the party's son, Lucas. Following the hearing, the trial court entered a 13-page single-spaced order containing 20 paragraphs of factual findings, a recitation of the 11 statutory factors to consider when adjudicating relocation petitions, and another 11 paragraphs applying specific factual findings to the 11 statutory factors. Moreover, the order expressed the trial court's frustration that removal cases are difficult. I could go on. Sure. So with that as a backdrop, and I think you would agree that best interest is factually, it's specific fact questions related to the case at hand, right? I would have several responses to that, Your Honor. Number one, I think that if I was a trial court judge and I never wanted to be returned on a removal case, I would make sure that that hearing didn't last just a half a day. I'd make sure it lasted three days, and if I could do a little bit better, I'd make it five days. And I'd make my opinion not 13 pages long, I'd make it 20 pages long. And I would go through every single case, and I would cite every single item of testimony that I thought supported my opinion. And I would know that if the manifest weight of the evidence standard of review was going to be applied as my opposing counsel wants it to be applied, I would know that I would never be reversed. I don't think that that's what appellate review is. I don't think that the manifest weight of the evidence standard says the appellate court cannot overturn a trial court ruling. I might get the adjectives incorrect, but arbitrary, fanciful, a manifest miscarriage of justice, however we want to put it. Here's what I would say about it. You mentioned the appellate court. They nowhere explain how manifest injustice would occur if relocation was allowed, or how the opposite conclusion is clearly evident based on the evidence presented. The dissent points out that the majority sidestepped the standard of review that we've been talking about, and the dissent would say that they reweighed the evidence and came down on the other side. Is that the appellate court's role? No, I don't think that that is the appellate court's role to be the trial court and reweigh the evidence and assess the credibility of witnesses, but I do think that the appellate court has a role, and I think that that role is to evaluate the trial court's decision under the manifest weight of the evidence standard, and that cannot be and is not no review, just as long as there's something. Are you saying that the 20 pages, the three days, are you saying that that was just a sham to avoid reversal? Oh, absolutely not. No, I was just arguing that I don't think that that should be, though, a litmus test. I think that, I don't think that, maybe I'm not saying this very well, but I don't think that should be a litmus test as to how long the trial court's opinion is or how many items of testimony and evidence were referenced by the trial court. I would say this. I'll try to keep my comments as... Where's the manifest injustice, and where did the appellate court identify any manifest injustice in the relocation? Well, Your Honor, let me answer that question this way. Mr. Alcorn and I, no doubt, have read many relocation cases. You see our problem, right? We've got tremendous detail by the trial judge, and an appellate court that doesn't identify manifest injustice looks to apparently just re-weigh it. I mean, we have to decide what to do with the appellate court, right? Right, but regardless of what the trial court cites in its written rulings, there's also a record on appeal. There's also a report of proceedings, and I think that the appellate court should look at all of it. It has to. It must. This is the Cliff Notes version of the case, and I would suggest to you that if Mr. Fatkin is allowed to move to Virginia Beach under the circumstances as presented to the trial court, there is no relocation statute anymore. Anybody can go for any reason. So the Cliff Notes version of the scenario is, my client and Mr. Fatkin married since 2004, moved to Galesburg, Illinois in 2008. They had lived in Virginia Beach for about 10 months in 2007 and 2008. My client is a Knox College professor with 6 out of 14 overnights with the children, and with some after-school visitation literally has, in essence, been a daily presence in their life at all times. The Eckert case actually says that the appellate court should be loath to allow removal when the non-residential parent has assiduously exercised his or her visitation rights. So, Mr. Fatkin has a Bachelor's of Fine Arts degree. He has a Montessori School teaching certificate, and he has a dental hygienist license. He works in Peoria for Aspen Dental, but doesn't agree with their business practices, and he leaves. He gets a job in Moline at another dental office. He gets fired four months later, applies for unemployment, but gets denied on the basis of misconduct. He decides at the time of the relocation hearing, he finds substitute employment part-time, making $12,000 a year as a compliance officer, safety officer for the city of Galesburg. He decides at the time of re-hearing that even though he lives in Galesburg, not going to search for dental hygienist jobs in Peoria, not going to search for dental hygienist jobs in the Quad Cities, and I've looked in Galesburg and I can't find any, but my parents, nobody else, but my parents live in Virginia Beach, Virginia. I can't tell you a dental office in Virginia Beach. I haven't named one, haven't applied to one, haven't had an interview with one, but I've got a job at Recreational Equipment Inc., REI, doing retail sales for between $9.50 an hour and I forget the upper range, $13.50, something like that. And the Virginia Beach schools are wonderful. We don't have statistics, we don't have standardized testing results, we don't have teacher to student ratios, we don't have lists of extracurricular activities, but believe me, they're wonderful. The schools are much better than in Knoxville, Illinois. There's a museum there, there are six or seven art festivals a year, and there's a national surfing competition. And really, really good concerts take place there, including like Metallica plays on the beach. I don't have a fiance there, I don't have a wife there. None of the facts and circumstances of this case are like we see in other cases where maybe somebody wants to move from the Chicago suburbs. We're going to hear something about this from Mr. Alcorn as well, I suspect, when he gets back on rebuttal. Are you asking us to reweigh the evidence then? No, I'm simply saying that I believe that the appellate court properly applied the manifest way to the evidence standard of review, and I believe that the trial courts allowing Todd Fatkin under the circumstances as presented at this hearing were... I was dumbfounded, it doesn't matter how I feel about it, but I'm just saying I was dumbfounded that the trial court allowed Todd Fatkin to relocate to Virginia Beach, Virginia under the circumstances as he presented them when my client, Danielle Fatkin, is almost a daily part of their life, room mother, extracurriculars, Knox College professor, involved in their daily lives since the day they were born. I was dumbfounded. So to answer your question, I think that the appellate court properly applied the manifest weight of the evidence standard and overturned the trial court's ruling. I think the trial court's ruling was arbitrary. I think it was not based on a reasonable assessment of the testimony and evidence in the record. So what am I asking you all to do? I'm asking you all to affirm the appellate court's application of that standard of review. With regard to... I was beginning my comments saying I agree with Mr. Alcorn. I think from a macro level there are two aspects to this case. The merits, which I've kind of spoken about here at the beginning, but then there's also the jurisdiction. Before I forget, I do want to... I think I can answer Mr. Alcorn's question about, well, what if the petition had been denied? Well, that would be a final and appealable order. Under 301, he would appeal it. Under 301, he'd file a notice of appeal within 30 days and there would be jurisdiction. It would be a final order denying his petition. To your Honor's comments about 306, as I said in my brief, and I do appreciate the comment by the amicus, in the amicus brief that this court should find that there's jurisdiction if there's a proper basis. The amicus pointed out that I filed my notice of appeal within three days of the judge's ruling. 306 would require me to have filed something in the appellate court within 14 days. So should this court view that as me implementing, seeking to engage the 306 jurisdiction, I can't in good faith stand up here and argue to you that I think 306 applies. I want jurisdiction to be upheld no matter on what basis you all decide. But I can't in good faith argue that I think 306 applies because I don't think it does. Even though it says the relocation order is appealable under 306. Yes, because that is from interlocutory orders and I think that if someone in post-divorce litigation, let's say they file a petition for temporary relief, they've got circumstances that require quick action or what they think needs to be quick action from the court. On one hand, that rule specifically speaks to relocation. One of the issues I think that's being raised here is in our new language of the statutes, what do we mean by relocation and what do we mean by modification? I think that's the problem that we have here. And it's argued that sometimes relocation doesn't mean modification, sometimes it does. Pretty clearly the rules have to mean something more specific than that. How do we deal with the fact that 306 specifically, not temporary or interim, says relocation orders are appealable under 306? I think my position is that that absolutely positively would apply to this case if this was an interlocutory order. I do not believe Judge Mangieri's ruling his order was an interlocutory order. I believe that it was a final order on the issue of relocation and the issue of the modification of parenting time, which is the modification of the allocation of parental responsibilities. And every modification order is final? Unless it's temporary. Unless there was some mechanism, like if the trial court said, well, I'm doing this now, but it will be reviewed in three months. I don't think that would be final. But I think if nothing is left to be said on the subject, like in this case, Mr. Fatkin is granted leave to relocate to Virginia Beach.  What about the fact that court reserved a couple of issues? Well, I think that's interesting, right? I've taken the position that, because I don't believe that this is a final order in the contemplation of 301 and 303. Mr. Alcorn and his client only asked for permission to relocate and to modify the allocation of parental responsibilities. There was no request for that, and so those remain pending. I do not believe it is a final, final order in the classic sense, in terms of the entire controversy and everything pending, because there is child support and transportation costs pending. So there's a difference between a final order and a final, final order? I believe that this was a final order on relocation and the modification of parental responsibilities. I do not believe it was a final order in the sense of 301 and 303, because it did not resolve everything pending before the court. Do you agree that, or do you think there should be a bright line rule? I do. And, you know, I was trial counsel, as was Mr. Alcorn for his client. Feel free to ask. Dan, why didn't you seek a 304A finding? I'll answer that question. I didn't seek a 304A finding because I had a final order adverse to my client on relocation and a modification of the allocation of parental responsibilities. I think Mr. Alcorn and I would both agree that this area of the law, it would be wonderful if we could bring some simplicity to it. And my position is really that simple. Your Honor was correct. The allocation of parental responsibilities is a statutory term. It means something. It's crystal clear in the IMDMA that parental responsibility means both parenting time and significant decision-making responsibilities with respect to a child. That's what it means. I think the amici for sure raised the question about being a slippery slope for you domestic relations lawyers and knowing what to do. What's the bright line rule that we should set forth? You know, the bright... Would you at all agree that maybe some other lawyer might not think it's as clear that it's a final order? I don't think another lawyer could think that with regard to relocation and the modification of parenting time. It was final. That was it. It wasn't final in the 301 or the 303 sense, but it was final. Now, the thing is, and I pointed out in my brief, and perhaps it's my strongest argument, and I think it's my simplest argument. If this appeal is dismissed for lack of appellate jurisdiction, if that is what you all conclude, and that there was not jurisdiction under 304B6, then you all have concluded and must be at peace with... Now, whether the rule changes in the future or not, that's obviously up to you guys. But if this appeal is dismissed, then you all have to be at peace with the fact that the allocation of parental responsibilities means one thing under the relevant substantive statute, the IMDMA, and it means another thing in Supreme Court Rule 304B6. Because there is no question that Todd Fatkin sought relocation and the modification of the allocation of parental responsibilities, parenting time. And he received both of those things in the trial court. So I appeal under 304B6 because this is a modification of the allocation of parental responsibilities. And all the talk about 306. 306 is discretionary, right? It would be with the appellate court, yeah. Where B6, if you employed B6, as you did, under the parental responsibilities and the definition of the statute, is immediately appealable. Right. So, you know, if we go back down to the trial court, I'll take my lumps and we'll get our child support and our transportation cost rulings and then it would be a final order. In hindsight, I suppose I could have gotten a 304A finding. I'm Monday morning quarterbacking myself because my client and I are in front of you here today, perhaps because of that. To me it's very clear. The allocation of parental responsibilities means something and unquestionably this appeal falls under that Supreme Court Rule. So, thank you for your time. If you have any other questions, I'm happy to answer them. Seeing none, thank you. Opposing counsel says that this rule means something. I would suggest that standards of review also mean something. And a standard of review that gives deference to the trial court, especially the level of deference that this standard of review, as announced in Collingborn and Eckert, give, wants or aims at getting finality in litigation at the trial court level. That's the main reason behind deferential standards of review. We can talk about what exactly a standard of review means and how it differs from another standard of review applicable under slightly different circumstances. And we can count the number of angels that can dance on the head of the pen, but the issue is why is there a deferential standard of review? And we all agree it's a deferential standard of review. Why? Well, because finality happens in the trial court on deferential standards of review. Why? Because losing litigants know that their chances on appeal are very, very slight. So you get resolution fast and cheap when you've got a deferential standard of review. Why does that matter? Why do we care about getting resolution finality quickly and cheaply? Because people have to live. Children have to live. They have to know where they're going to go to school. Parents have to know whether they can move to be with their dying mother who's got stage five renal failure or not. It's been almost two years since Todd Fatkin filed his or served his notice of intent to move. By the time this court rules, casting no aspersions on how long it takes for appellate litigation, by the time this court rules, it will have been two years since Todd wanted to move and took the first statutory action to do that. Now, can you tell us where is he? Where are the children? They are still here. They're still in East Galesburg. They didn't move because Judge Mangieri put a stay in place, okay, until April. And then when April came and went, when the appellate court overturned the trial court, Mr. Fatkin decided to stay here rather than take extraordinary action, move, and then maybe be forced to come back. But there was a stay in place. The stay didn't last quite as long as it needed to because the appellate court took a little bit longer than 311 allows to rule. But be that as it may, there was a long period of time where Mr. Fatkin didn't move. The children didn't move. And so what happened during that? And that's just two years. If this case goes back for lack of jurisdiction, we get to do this all over again. So maybe it's four years. So we took a 12-year-old who will now be 16 years old. We took a 7-year-old who will now be 11 years old. We put them through a situation where they were in relative poverty, food stamp situation. Answer this. How long did the appellate court take from the time of the notice of appeal or the petition? A few weeks. It was a few weeks longer than the Supreme Court rule allows, 311. So it wasn't too long. No, it wasn't too long. It wasn't a significant. It's just that my point is that when you involve appellate litigation on issues, it's great when you're dealing with business interests and money. It's not great. Does he still intend to move? He wants to move. Yes, Your Honor. He wants to move. So we wouldn't have any movements problems or anything like that? No. No. He wants to move and he will move if he wants to. That standards of review mean something. And they mean something because in this type of post-dissolution litigation, there's a standard of review on relocation that is very deferential. And so the trial courts can make decisions and those decisions, for all intents and purposes, become final unless there is some manifest injustice. Unless they're arbitrary. And clearly this is not an arbitrary. If we find we have jurisdiction and if we find that based upon the appellate court's failure to enunciate a standard of review or apply it, we can review the trial court's findings under the manifest weight of evidence standard or reverse and send it back to the appellate court to do so. That's correct, Your Honor. And that's essentially what I would like to see, obviously, is that the court address the merits. But as an officer of the court, I had to bring to the court's attention the lack of, the potential lack of jurisdiction. And so I had to point that out and argue that. What's in my client's best interest is that the court find jurisdiction and move to the merits and apply the standard of review how it's supposed to be applied, like in Eckert and Collingborn. Reverse the appellate court, affirm the trial court, and let my client move to Virginia. Now, I had to argue a jurisdictional issue as an officer of the court. And I think that Amici makes a good argument on the jurisdictional issue. Either way, this needs to be sent back. Either on jurisdiction or on the merits, this case needs to go back. I'm afraid that what's happening is that this court is going to find lack of jurisdiction, send it back. Judge Mangieri gets to find the child support and the transportation cost issues. And then Danielle appeals again to the appellate court. And we're back on the same thing. And who knows what the appellate court's going to do the second time around. Maybe there's a PLA. Maybe it's granted. Maybe we're back up here. That would be a travesty when the standard of review here is so deferential. And Judge Mangieri did such a careful job, such a thorough job that, you know, Mr. Cordes stood up here and commented on some of the evidence, some of the evidence. If you look at page 31, I hesitated to even do this in my brief because Judge Mangieri does it so articulately and so well in his 13-page order. But I did recite, starting at page 31 of my appellant's brief, what the court found, what those findings were, findings of fact and conclusions. And they are compelling. They're certainly not arbitrary. They're certainly not unreasonable. And certainly the court can't find that there wasn't any evidence to support the trial court's findings. If there are no further questions, I will simply reiterate our prayer that the court reverse the appellate court and send this case either back down on lack of jurisdiction grounds or affirm the trial court on the merits. Thank you. Thank you. Case number 123-602, Enri, the marriage of Katkin, will be taken under advisement as agenda number four. Mr. Alcorn, Mr. Cordes, we thank you for your arguments. You are excused.